UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT T. LEE, <u>et al.</u>,            )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )  Civil Action No. 06-2184 JDB
                                        )
UNITED STATES OF AMERICA, <u>et al.</u>, )
                                        )
            Defendants.                 )
_____ )

FEDERAL DEFENDANTS' MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

The United States of America and Capitol Police Officer Luis

Arellano,[1] hereby move pursuant to Rules 12(b)(1), (2), (4), (5)

and (6) of the Federal Rules of Civil Procedure to dismiss the

remaining Counts in this action.[2]  In the alternative, Federal

Defendants move for summary judgment in their favor, pursuant to

Fed. R. Civ. P. 56.[3]  The Court is respectfully referred to the

_____

[1]  Plaintiffs have also listed as defendants unknown members
of the U.S. Capitol Police who allegedly also "joined in the high
speed chase."  <u>See</u> Amended Complaint, ¶¶ 8, 14.  Although
undersigned counsel do not currently represent these "John Doe"
defendants, the same defenses that apply to the named Federal
Defendants would also apply to these officers.  Thus, while this
motion cannot be read to have waived any defenses that may apply
to these officers, the Court may <u>sua sponte</u> dismiss the claims
against these "John Doe" defendants.  <u>See</u> Fed. R. Civ. P. 12(h);
<u>Best</u> v. <u>Kelly</u>, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (Court of
appeals has concluded that dismissal is appropriate, even <u>sua
sponte</u>, where a plaintiff's claims are "patently insubstantial,"
where the plaintiff espouses a bizarre conspiracy theory or where
the plaintiff cannot possibly win relief.)

[2]  Plaintiffs voluntarily dismissed the Constitutional
claims (Count I) of the Amended Complaint.  Moreover,
accompanying this motion is a certification pursuant to 28 U.S.C.
§ 2679(d), substituting the United States as the defendant for
all remaining claims that were asserted against Officer Arellano.

[3]  To the extent that the Court may rely on matters outside
of the pleadings, the Court may enter summary judgment in favor
of the defendants.  <u>See</u> Fed. R. Civ. P. 12(b); 56.  Plaintiffs

accompanying memorandum and statement of material facts.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


                                              /s/
_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

---

should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless Plaintiffs submit affidavits or other documentary evidence contradicting the assertions in the documents. <u>See Neal v. Kelly</u>, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e).  Rule 56(e)(2) provides:

(e) Affidavits; Further Testimony.

    (2) Opposing Party's Obligation to Respond.  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT T. LEE, et al.,                )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )  Civil Action No. 06-2184 JDB
                                      )
UNITED STATES OF AMERICA, et al.,     )
                                      )
          Defendants.                 )
                                      )

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

     According to the Amended Complaint, in the early hours of

December 24, 2005, Alyce Summers and Jewel West accepted a ride

in a 2003, 2-door Z4 BMW automobile[1] driven by a man who had 30

_____

     [1]  The Court may take judicial notice that the vehicle
described in Plaintiffs' Amended Complaint had only two seats.
See Amended Complaint, ¶ 10 (the car was a 2003, 2-door Z4 BMW);
http://www.edmunds.com/used/2003/bmw/z4/100191225/specs.html
(describing these vehicles as "Two Seaters").  In determining
whether the Complaints fail to state a claim, the Court may
consider the facts alleged in the complaint, any documents
attached or incorporated in the complaints, and matters of which
the Court can take judicial notice.  Fed. R. Evid. 201; EEOC v.
St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir.
1997).  The Court may take judicial notice of public documents
without converting Defendant's Motion to Dismiss into a motion
for summary judgment.  Swierkiewicz v. Sorema, 534 U.S. 506
(2002).  And Federal courts regularly take judicial notice of
government documents and documents from other reliable sources
available on the Internet.  Id.; see also Grimes v. Navigant
Consulting, Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill.), vacated
and remanded on other grounds, 536 U.S. 920 (2002) (taking
judicial notice of historical stock prices from Yahoo!Finance)
(citing Austin v. American Ass'n of Neurological Surgeons, 253
F.3d 967, 971 (7th Cir. 2001)); Cali v. East Coast Aviation
Servs., Ltd., 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (taking
judicial notice of Web-based corporate documents and documents
from Pennsylvania state agencies and FAA); McLaughlin v.
Volkswagen of Am., Inc., No. 00-3295, 2000 U.S. Dist. LEXIS 17505
at *10 n.3 (E.D. Pa. Dec. 6, 2000) (taking judicial notice of
NHTSA website description of automobile recall); Cairns v.

minutes earlier stolen the car in an armed carjacking in Prince George's County, MD.  Amended Complaint, ¶¶ 9-10.  At 1:15 a.m., United States Capitol Police Officer Luis Arellano attempted to stop the vehicle for an alleged traffic infraction, but the driver refused to stop.  Id., ¶ 11.  Unstated in the Amended Complaint is something indisputably set forth in the tape recording of the radio transmissions made during the events: that, at the time the officer was attempting to stop the BMW driver for disobeying the traffic laws, the officer was also aware that the vehicle had been stolen in an armed carjacking minutes earlier.[2]  Plaintiffs admit that, rather than stop, the BMW accelerated to speeds of up to 80 miles per hour before the driver lost control in the 1700 block of Pennsylvania Ave., S.E., where the BMW struck the north curb, the south curb and a light pole, killing Ms. West and injuring Ms. Summers.  Id., ¶¶ 12, 17-19.

---

Franklin Mint Co., 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of content on Warhol Museum's Web pages), aff'd, 292 F.3d 1139 (9th Cir. 2002); In re AgriBiotech Secs. Lit., No. CV-S-990144, 2000 U.S. Dist. LEXIS 5643 (D. Nev. Mar. 6, 2000) (taking judicial notice of public SEC filings from SEC Website); Modesto Irrigation Dist. v. Pacific Gas & Elec. Co., 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of FERC documents available on Internet); Myers Investigative & Sec. Servs., 47 Fed. Cl. 288, 297 (Fed. Cl. 2000) (taking judicial notice of documents from Social Security Administration Website).

[2]  See December 12, 2007 Declaration of Cecelia E. Barrios, ¶¶ 4-5 and accompanying Radio Transcript at 1.  A copy of the tape recording was provided to counsel for Plaintiffs on December 13, 2007, and another copy will be provided to the Court.

Plaintiffs[3] asserted six counts in the Amended Complaint:
Count I (Bivens);[4] Count II (Federal Tort Claims Act ("FTCA"));
Count III (Survival Act); Count IV (Wrongful Death);[5] Count V
(Gross Negligence) and Count VI (Assault & Battery). See Amended
Complaint at 5-12. Plaintiffs' Count I, encompassing
constitutional claims, was dismissed by Plaintiffs on February 5,
2008. As set forth below, with respect to the remaining counts
(Counts II through VI), the United States must be substituted as
the sole defendant by virtue of the certification which
accompanies this memorandum. See 28 U.S.C. § 2679(d). Those
claims are, in turn, subject to dismissal, because they are based
on the officer's participation in a high-speed police chase,
something that has no private analog under the FTCA. Moreover,
even were the certification somehow successfully challenged,
Plaintiffs' claims against the officer would be subject to

---

[3]    The Amended Complaint is brought in the name of Robert
T. Lee (described as the personal representative of Ms. West's
estate and Ms. West's father) and in the name of Alyce Summers.
Amended Complaint, ¶¶ 4-5.

[4]    See Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics, 403 U.S. 388 (1971).

[5]    The District of Columbia Survival Act compensates estate
for injuries caused to decedent while Wrongful Death Act provides
for a right of action to the survivor who suffers loss as result
of death of decedent, but under both statutes the plaintiff needs
a viable cause of action at the time of the decedent's death.
See D.C. Code 1981, §§ 12-101, 16-2701. Nelson v. American Nat.
Red Cross, 26 F.3d 193, 199 (D.C. Cir. 1994) (citing Runyon v.
District of Columbia, 463 F.2d 1319, 1321 (D.C. Cir. 1972)).

Plaintiff recited in support of the Survival Action DC Code
§ 12-201, but Federal Defendants believe that the statute can be
found in section 101 of that title.

dismissal as untimely and for failure to effect proper service.

ARGUMENT

Plaintiffs' Remaining Claims May Only Be Pursued Against
The United States and Are Without Merit as Well

Counts II through VI are common law claims for which the United States has been substituted as the sole defendant by operation of 28 U.S.C. § 2679(d). The only proper defendant with respect to these tort claims is the United States, which must be substituted in lieu of Officer Arellano. Dismissal or summary judgment in favor of Federal Defendants on those claims is appropriate as well.

In late 1988, Congress enacted and the President signed into law, the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"), Pub. Law. 100-694. The FELRTCA was the Congressional response to the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292 (1988), a case in which the Supreme Court made it more difficult for federal employees sued for common law torts in their individual capacities to obtain immunity from suit. Because Congress perceived Westfall to constitute an "erosion of immunity of Federal employees" and found the decision created "an immediate crisis . . . for the entire Federal workforce", P.L. 100-694, section 2(a)(5), Congress amended the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq., to provide for substitution of the United States as the exclusive defendant whenever federal employees are sued for common law tort claims arising out of actions taken within the scope of their federal employment.

-4-

Specifically, Section 2679(b)(1) was amended to provide:

> The remedy against the United States provided by
> sections 1346(b) and 2672 of this title for injury or
> loss of property or personal injury or death arising or
> resulting from the negligent or wrongful act or
> omission of any employee of the Government while acting
> within the scope of his office or employment is
> <u>exclusive</u> of any other civil action or proceeding for
> money damages by reason of the same subject matter
> against the employee whose act or omission gave rise to
> the claim or against the estate of such employee.  Any
> other civil action or proceeding for money damages
> arising out of or relating to the same subject matter
> against the employee's estate is precluded without
> regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1) (emphasis added).  Similarly, 28 U.S.C. §
2679 was amended to provide:

> Upon certification by the Attorney General that
> the defendant employee was acting within the scope of
> his office or employment at the time of the incident
> out of which the claim arose, any civil action or
> proceeding commenced upon such claim in a United States
> district court <u>shall</u> be deemed an action against the
> United States under the provisions of this title and
> all references thereto, and the United States <u>shall</u> be
> substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added).  The effect of the

statute is clear.  Once the Attorney General or her designee

certifies that an individually sued federal defendant was acting

within the scope of his employment, the United States must be

substituted as the exclusive defendant for all common law tort

claims.  Moreover, once substituted, all provisions and

exclusions of the FTCA apply as if the United States were sued in

the first instance.  28 U.S.C. § 2679(d)(4).  <u>See</u> <u>also</u> H. Rep.

100-700, 100th Cong. 2d Sess., reprinted at 1988 U.S. Code Cong.

& Ad. News 5945-55.

Under the Westfall Act, once the certification is made that

-5-

the federal employee acted within the scope of his employment, the plaintiff properly can proceed only against the United States as defendant; the federal employee remains immune from suit. Osborn v. Haley, 127 S.Ct. 881, 893 (2007); Haddon v. United States, 68 F.3d 1420, 1422-23 (D.C. Cir. 1995) (federal employees are immune from state tort lawsuits for money damages if their tortious conduct occurred while they were acting within the scope of their employment.)[6]

In this case, the United States must be substituted for Defendant Arellano as the exclusive defendant for Plaintiffs' common law tort claims.  The Attorney General has delegated authority to issue certifications to the various United States Attorneys.  28 C.F.R. § 15.4.  On March 20, 2006, the United States Attorney redelegated that authority to Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office.  Attached hereto is a certification by Mr. Contreras that the individual federal defendant was acting within the scope of his employment with the United States at the time of the incidents alleged in the Amended Complaint.

Accordingly, the United States "shall" be substituted as the exclusive defendant.  28 U.S.C. § 2679.  This is true whether or

---

[6]  A litigant may challenge whether the defendant was, in fact, acting in the scope of his or her employment if the issue is in dispute.  See Majano v. United States, 469 F.3d 138, 141-42 (D.C. Cir. 2006).  Here, however, it is undisputed that Officer Arellano "was, at all times relevant herein, a member of the U.S. Capitol Police and was acting within the scope of his employment at the time of the incident complained of herein."  Amended Complaint, ¶ 7.

not an exception to the FTCA precludes recovery against the
United States.  <u>United States</u> v. <u>Smith</u>, 499 U.S. 160 (1991).
Yet, under the facts of the instant case, it becomes clear that
the claims which Plaintiffs seek to pursue are all claims for
which the United States has not waived sovereign immunity.[7]

Plaintiffs' claims are all premised on the assertion that
Officer Arellano or other officers somehow wrongly engaged in a
high-speed pursuit of the BMW in which Ms. West and Ms. Summers
were passengers.  <u>See</u> Amended Complaint, ¶¶ 19, 28, 31, 34, 36
and 40.  Section 1346(b) of the FTCA provides that federal
district courts:

> shall have exclusive jurisdiction of civil actions on
> claims against the United States, for money damages,
> accruing on or after January 1, 1945, for injury or
> loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any
> employee of the Government while acting within the
> scope of his office or employment, under circumstances
> <u>where the United States, if a private person, would be</u>
> <u>liable</u> to the claimant in accordance with the law of
> the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added).

In times past, an FTCA claim for negligence in a police
chase may have prevailed.  <u>See</u> <u>Hetzel</u> v. <u>United States</u>, 43 F.3d
1500, 1505 (D.C. Cir. 1995).  In <u>Hetzel</u>, although the Court
recognized that there was "no readily available private analog[]
upon which to premise liability under the FTCA," the Court
adopted a practice of other courts to "abandon the private

---

[7]  Sovereign immunity claims are jurisdictional and, as
such, cannot even be waived.  <u>See</u> <u>Burkhart</u> v. <u>WMATA</u>, 112 F.3d
1207, 1216 (D.C. Cir. 1997).

individual analogy and look[] to the standards of care applicable to government employers under state law." <u>Hetzel</u>, 43 F.3d at 1503-04.  In so doing, the <u>Hetzel</u> Court specifically cited, <u>inter alia</u>, the decision in <u>Doggett</u> v. <u>United States</u>, 875 F.2d 684, 689 (9th Cir. 1989).  <u>See</u> <u>Hetzel</u>, 43 F.3d at 1503-04.

Unfortunately for Plaintiffs, these authorities no longer represent the law.

> The Federal Tort Claims Act (FTCA or Act) authorizes private tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  We here interpret these words to mean what they say, namely, that the United States waives sovereign immunity "under circumstances" where local law would make a "<u>private person</u>" liable in tort. (Emphasis added.)  And we reverse a line of Ninth Circuit precedent permitting courts in certain circumstances to base a waiver simply upon a finding that local law would make a "state or municipal entit[y]" liable.  <u>See</u>, <u>e.g.</u>, <u>Hines</u> v. <u>United States</u>, 60 F.3d 1442, 1448 (1995); <u>Cimo</u> v. <u>INS</u>, 16 F.3d 1039, 1041 (1994); <u>Cameron</u> v. <u>Janssen Bros. Nurseries, Ltd.</u>, 7 F.3d 821, 825 (1993); <u>Aguilar</u> v. <u>United States</u>, 920 F.2d 1475, 1477 (1990); <u>Doggett</u> v. <u>United States</u>, 875 F.2d 684, 689 (1988).

<u>United States</u> v. <u>Olson</u>, 546 U.S. 43, 44-45 (2005) (emphasis original).  Thus, it is clear that in order to state a claim under the FTCA, <u>i.e.</u> a claim for which there has been a waiver of sovereign immunity, there must truly be a <u>private</u> analog for such a suit in the jurisdiction.  As the <u>Hetzel</u> court has already recognized,

> No private individual has the authority to engage in a high-speed chase of a suspected felon as occurred here, and thus there is no readily available private analog upon which to premise liability under the FTCA.

<u>See</u> <u>Hetzel</u>, 43 F.3d at 1503.  The result, in light of <u>Olson</u>, is

-8-

therefore preordained.  Plaintiffs' claims, lacking any private analog, are not among those for which the sovereign immunity of the United States has been waived.  These claims are, therefore, subject to dismissal under Fed. R. Civ. P. 12(b)(1).

Dismissal or summary judgment is also appropriate under the circumstances, even if some waiver of sovereign immunity were available.  The Supreme Court has recently refocused the analysis of when a plaintiff has alleged facts that can withstand a motion to dismiss.  See Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007).  In Twombly, the Court clarified the standards for evaluating whether a complaint satisfies Fed. R. Civ. P. 8.  The Court held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65; that "[f]actual allegations must be enough to raise a right to relief above the speculative level," id.; and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief," id. at 1965, n.3.  In so holding, the Court rejected a literal reading of the Court's earlier statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The Court explained that this "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Id. at 1969.  In addition,

-9-

the Court stressed that"[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'"  Id. at 1959.  Instead, the Court admonished, courts should "tak[e] care to require allegations" that meet the Federal Rules' threshold pleading requirements.  Id.; see also Scott v. Harris, 127 S.Ct. 1769, 1776 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" and uncontradicted tape recording of events warrants summary judgment).

Another Judge of this Court has analyzed the state of the law after Twombly:

> Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1965, but "something beyond . . . mere possibility . . . must be alleged[.]" Id. at 1966.  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 1965, or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 1974.  The Court referred to this newly-clarified standard as "the plausibility standard." Id. at 1968 (abandoning the "no set of facts" language from Conley v. Gibson).

> On a motion to dismiss for failure to state a

-10-

claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." <u>Erickson</u> v. <u>Pardus</u>, 127 S.Ct. at 2200; <u>see also</u> <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 127 S.Ct. at 1965; <u>Summit Health, Ltd.</u> v. <u>Pinhas</u>, 500 U.S. 322, 325, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).  The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." <u>Kowal</u> v. <u>MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994); <u>see also</u> <u>Browning</u> v. <u>Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002); <u>Sparrow</u> v. <u>United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000). While the complaint is to be construed liberally in plaintiff's favor, <u>the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions</u>. <u>See</u> <u>Kowal</u> v. <u>MCI Communications Corp.</u>, 16 F.3d at 1276; <u>Browning</u> v. <u>Clinton</u>, 292 F.3d at 242.

<u>Sanders</u> v. <u>District of Columbia</u>, Civil Action No. 06-1411 PLF, 2007 WL 3299020, *2 (D.D.C. Nov. 8, 2007) (emphasis added).

Summary judgment would also be appropriate, given that the undisputed facts establish that the officer was attempting to stop the BMW not simply for a traffic violation, but immediately after receiving a radio broadcast of a lookout for the vehicle which had been stolen minutes earlier in an armed carjacking. One cannot reasonably say that police acted improperly (or with some bad motive) in attempting to catch an armed robber fleeing in a car at 1:15 a.m., even if there were two passengers in the single passenger seat.  <u>See</u> <u>Anagnos</u> v. <u>Hultgren</u>, 445 F.Supp.2d at 189-90; Amended Complaint, ¶ 13.  Federal Defendants do not concede that the passengers were necessarily visible to the police as alleged in the Amended Complaint.  But, even had they been, a reasonable law enforcement officer may easily conclude that the passengers were crammed in the uncomfortable single

-11-

passenger seat against their will through use of the same weapon used in the armed carjacking minutes earlier.  Thus, it would have been even more important not to allow the felon-driver's escape.

Plaintiffs imply that, because "departmental orders proscrib[ed] high speed chases under these circumstances for traffic stops," see Amended Complaint, ¶ 13; id., ¶¶ 14-16, the Court should infer some conscience-shocking intent to harm.  The facts alleged in the Amended Complaint, however, cannot support the fanciful conclusion that Plaintiffs would attribute to them. Plaintiffs admit that the driver of the BMW stole it in an armed carjacking minutes before Officer Arellano attempted the traffic stop, see Amended Complaint, ¶ 10; and they do not allege that the Officer was unaware of the armed carjacking.  See id., ¶ 11. In fact, from the beginning of the brief and rapidly unfolding encounter, Officer Arellano was fully aware that the vehicle was the one stolen in the armed carjacking minutes earlier.  See Barrios Decl., ¶¶ 4-5 and attached Radio Transcript.  Thus, even if one could view a high-speed chase for a traffic infraction as wrongful, something that Federal Defendants dispute, it certainly would not be unreasonable that such a chase was initiated to capture an armed felon.[8]

---

[8]  Plaintiffs also imply that because there were two passengers in the vehicle besides the driver, the officer's action was somehow particularly wrongful.  See Amended Complaint, ¶¶ 13-14.  In fact, that an armed felon had two women forced into a single passenger seat of a two-seater car would easily provide a reasonable officer cause to believe that they may have been held against their will.  This fact, therefore, would have

Indeed, other courts have rejected the notion that merely failing to adhere to all internal police directives in high-speed chase situations provides sufficient evidence to support a civil action.  See White v. Polk County, 2006 WL 1063336 at *6 (M.D. Fla. Apr. 21, 2006) (citing Fagan v. City of Vineland, 22 F.3d 1296, 1306-07 (3rd Cir. 1994) and Smith v. Lexington Fayette Urban County Government, 884 F. Supp. 1086 (E.D. Ky. 1995)); Philebaum v. Myers, 2006 WL 335518 at *14 (N.D. Ind. Feb. 13, 2006); Ward v. City of Boston, 367 F.Supp.2d 7, 13 (D. Mass. 2005) ("Neither the fact that the Officers violated Department Regulations nor the fact that they continued the pursuit after being ordered to stop elevate their conduct to a level sufficient to shock the conscience and support a violation of constitutional rights.") (citing Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997)); accord District of Columbia v. Henderson, 710 A.2d 874, 877 (D.C. 1998) (violation of MPD General Order 301.3, which provided that all emergency vehicles should stop before proceeding through red lights, was insufficient to support finding of gross negligence).  Thus, dismissal or summary judgment in favor of the United States would be appropriate.

 Even If Officer Arellano Were to Remain in the Case, He Has Not Been Properly Served and the Claims Against Him Would Be Untimely

As noted above, the United States is the sole remaining defendant after its substitution under 28 U.S.C. § 2679(d); and all parties agree that the officer was acting within the scope of

---

provided even greater reason to pursue the stolen car.

his employment at the relevant times. <u>See</u> Amended Complaint, ¶ 7. But Plaintiffs would have no basis to pursue claims against the officer anyway, because this Court is without personal jurisdiction over Defendant Arellano in the absence of proper service and the claims against him would be untimely.

It is well established that, in an action against a federal employee in an individual capacity, the individually-sued defendant must be served with process in accordance with rules applicable to individual defendants. <u>See</u> Fed. R. Civ. P. 4(i)(3); <u>Simpkins</u> v. <u>District of Columbia Government</u>, 108 F.3d 366, 369 (D.C. Cir. 1997); <u>Lawrence</u> v. <u>Acree</u>, 79 F.R.D. 669, 670 (D.D.C. 1978); <u>Navy, Marshall & Gordon</u> v. <u>U.S. International Development-Corporation Agency</u>, 557 F.Supp. 484, 489 (D.D.C. 1983); <u>Delgado</u> v. <u>Bureau of Prisons</u>, 727 F.Supp. 24 (D.D.C. 1989). Rule 4 generally requires that a copy of the summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. <u>See</u> Fed. R. Civ. P. 4(e)(2). Service on the Attorney General of the United States and the United States Attorney for the district in which the action is brought, pursuant to the rules applicable to official capacity suits, "does not obviate the requirement of personal service . . . where the action is in substance against a federal official in his individual capacity." <u>Lawrence</u>, 79 F.R.D. at 670; <u>Delgado</u>, 727 F.Supp. at 27. Indeed, under Rule 4, service on the United

-14-

States is required <u>in addition to</u> service on an individual

Federal defendant.  Fed. R. Civ. P. 4(i)(3).

Where a plaintiff seeks relief against a Federal defendant

in an individual capacity, the Court must acquire personal

jurisdiction in order to enter a binding judgment, <u>Reuber</u> v.

<u>United States</u>, 750 F.2d 1039, 1049 (D.C. Cir. 1984); <u>Griffith</u> v.

<u>Nixon</u>, 518 F.2d 1195 (2d Cir.), <u>cert</u>. <u>denied</u>, 423 U.S. 995

(1975), and the general rule is that a plaintiff has the burden

of establishing personal jurisdiction.  <u>Reuber</u>, <u>supra</u> at 1052.

Because the record in this action does not establish proper

personal service upon Defendant Arellano, any claim against him

would be subject to dismissal.

Plaintiffs' apparent efforts to effect service by providing

copies of the summons and complaint to the Office of the General

Counsel of Officer Arellano's employer does not satisfy the

requirements of Rule 4.  <u>See</u> <u>McLaughlin</u> v. <u>Fidelity Sec. Life</u>

<u>Ins.</u>, 667 A.2d 105, 106 (D.C. 1995) (the mere appearance of

authority is insufficient to allow service of process on someone

not actually the defendant's agent; the agent's authority cannot

be implied from the agent's position) (<u>citing</u> <u>Leichtman</u> v. <u>Koons</u>,

527 A.2d 745, 747 and n.5 (D.C. 1987) (Office employee with

authority to receive business mail does not, by virtue of his or

her position, have authority to receive process, and actual

knowledge of the existence of a lawsuit is no substitute for

personal service)).  Plaintiffs have submitted a notice

describing the person who acknowledged receipt of the summonses

-15-

and complaints (Cecelia Barrios) as the "representative" of the individual defendant. See Affidavit Of Service (Docket No. 31). Plaintiffs, however, offer no basis of knowledge for assessing whether Ms. Barrios has been authorized to accept service of process on behalf of the individual defendant in his individual capacity. Nor does the Affidavit of Service even specify whether such an agency relationship exists between Ms. Barrios and Officer Arellano in his individual capacity. Id., ¶ 4. In fact, Ms. Barrios is not, and never has been, authorized to accept service for Officer Arellano. See January 18, 2008 Declaration of Cecelia E. Barrios. Plaintiffs have therefore not satisfied the requirements of service. Fed. R. Civ. P. 4. Because the record in this action does not establish proper personal service upon Defendant Arellano in his individual capacity, any claims that Plaintiffs might seek to pursue against him would be subject to dismissal unless and until he is properly served.[9]

Moreover, any Claims Against Officer Arellano in his individual capacity would be subject to dismissal as untimely. The events giving rise to the claims in this action arose out of a traffic stop initiated by Officer Arellano on December 24, 2005. See Amended Complaint, ¶¶ 9-10. Officer Arellano was not

---

[9] In light of the several other reasons calling for dismissal of Plaintiffs' claims, no purpose would be served by the calling for additional efforts to effect proper service in this action. See Simpkins v. District of Columbia Government, 108 F.3d at 370 (dismissing baseless claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), on the merits notwithstanding lack of proper service); Weakes v. FBI-MPD Safe Streets Task Force, Civil Action No. 05-0595 ESH, 2006 WL 212141, *1 fn.3 (D.D.C. Jan. 27, 2006).

named as a defendant until the Amended Complaint was filed in

September 2007.  Officer Arellano submits that the one-year

statute of limitations governs Plaintiffs' intentional tort

claims against him, such as Count II, and Count VI, as well as

some or all of Count III, Count IV and Count V.

> The D.C. statute of limitations reads, in relevant
> part: Except as otherwise specifically provided by law,
> actions for the following  purposes may not be brought
> after the expiration of the period specified below from
> the time the right to maintain the action accrues:. .
> .(4) for libel, slander, assault, battery, mayhem,
> wounding, malicious prosecution, false arrest or false
> imprisonment -- 1 year; . . .(8) for which a limitation
> is not otherwise specially prescribed--3 years.  D.C.
> Code § 12-301.  We agree with the district court that
> the one year limitations period should be applied.

Doe v. United States Department of Justice, 753 F.2d 1092, 1114 &

n.28 (D.C. Cir. 1985) (footnote inserted into text).

> [T]he District does not resort to this default
> provision [D.C. Code § 12-301(8)] every time a
> plaintiff uses a label that does not precisely match a
> specific statute of limitations.  If a stated cause of
> action is "intertwined" with one for which a
> limitations period is prescribed, District courts apply
> the specifically stated period, not the three-year
> catch-all.  See Saunders v. Nemati, 580 A.2d 660, 661-
> 62 (D.C. App. 1990); see also Hunter v. District of
> Columbia, 943 F.2d 69, 71-72 (D.C. Cir. 1991) (finding
> claim for emotional damages arising from assault
> governed by one-year period prescribed for assault).

Mittleman v. United States, 104 F.3d 410, 415 (D.C. Cir. 1997).

Here, the allegedly unlawful action took place in December

2005.  See Amended Complaint, ¶¶ 9-10.  Because Plaintiffs'

claims against Officer Arellano were not commenced until 2007,

the claims would be barred by the statute of limitations.  See

McClam v. Barry, 697 F.2d 366, 372-74 (D.C. Cir. 1983) (false

arrest claim most closely analogous to a claim under D.C. Code §

-17-

12-301(4)).  Thus, the one-year statute of limitations would bar

any claims against Officer Arellano were Plaintiff successfully

to challenge the Attorney General's certification.[10]

---

[10]   Plaintiffs could not successfully argue that the naming
of "John Doe" defendants in the original December 22, 2006
Complaint would satisfy the statute of limitations.  Rule 15(c)
of the Federal Rule of Civil Procedure permits an amendment to
relate back only where there has been an error made concerning
the identity of the proper party and where that party is
chargeable with knowledge of the mistake; it does not permit
relation back where there is merely a lack of knowledge or
identity of the defendant.  See Rendall-Speranza v. Nassim, 107
F.3d 913, 919 (D.C. Cir. 1997); Delgado-Brunet v. Clark, 93 F.3d
339, 344 (7th Cir. 1996); Wood v. Worachek, 618 F.2d 1225, 1230
(7th Cir. 1980); Worthington v. Wilson, 8 F.3d at 1256-57 (7th
Cir. 1993); see also Garrett v. Fleming, 362 F.3d 692 (10th Cir.
2004); Ferreira v. City of Pawtucket, 365 F.Supp.2d 215, 217
(D.R.I. 2004).

CONCLUSION

For these reasons, Federal Defendants submit that this action should be dismissed or, alternatively, that summary judgment should be entered in favor of Federal Defendants.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                    /s/
_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

-19-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT T. LEE, <u>et</u> <u>al.</u>,          )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )  Civil Action No. 06-2184 JDB
                                      )
UNITED STATES OF AMERICA, <u>et</u> <u>al.</u>, )
                                      )
          Defendants.                 )
_____)

FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS
<u>AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

     Pursuant to Local Civil Rule 7(h), the Federal Defendants
hereby provide the following statement of material facts as to
which there is no genuine dispute:

     1)  The events described in the Amended Complaint in this
action took place on December 24, 2005, at approximately 1:15
a.m.  <u>See</u> Amended Complaint, ¶¶ 9-12.

     2)  The Amended Complaint naming Officer Arellano was not
filed until September 2007.  Amended Complaint at 1 (Docket Entry
No. 29).

     3)  Toward the beginning of the police chase that is alleged
in the Amended Complaint, Officer Arellano received a radio
broadcast which was tape recorded and which is accurately
transcribed in the Transcript of December 24, 2005 Radio
Communications Tape ("Radio Transcript") accompanying the
December 17, 2007 Declaration of Cecelia E. Barrios.  <u>See</u>
December 12, 2007 Declaration of Cecelia E. Barrios, ¶¶ 4-5 and
accompanying Radio Transcript at 1 and Tape Recording.

     4)  Toward the beginning of the police chase that is alleged
in the Amended Complaint, Officer Arellano received a radio

broadcast which advised him from the outset that the 2003 BMW Z4 with DC License Tags BY 1037 "was wanted in an armed carjacking" that occurred approximately 30 minutes earlier.  <u>See</u> Amended Complaint, ¶ 10; December 12, 2007 Declaration of Cecelia E. Barrios, ¶¶ 4-5 and accompanying Radio Transcript at 1 and Tape Recording.

    5)  The December 24, 2005 chase of the BMW automobile described in the Amended Complaint lasted approximately two minutes.  <u>Id</u>.

    6)  As described on the tape recording of the events around 1:15 a.m. on December 24, 2005, Officer Arellano (Unit 114) had lost the 2003 BMW Z4 with DC License Tags BY 1037 while he was still on Pennsylvania Ave., but before the vehicle crashed at the Sousa Bridge.  <u>See</u> December 12, 2007 Declaration of Cecelia E. Barrios, ¶¶ 4-5 and accompanying Radio Transcript at 1-2 and Tape Recording.

    7)  The 2003, 2-door Z4 BMW, with DC tag number BY1037, which is described in the Amended Complaint had only two seats, one for a driver and one for a passenger. Amended Complaint, ¶10; http://www.edmunds.com/used/2003/bmw/z4/100191225/specs.html (describing these vehicles as "Two Seaters").

8)  Cecelia E. Barrios is not, and never has been, authorized to accept service of process on behalf of Luis Arellano.  <u>See</u> January 18, 2008 Declaration of Cecelia E. Barrios, ¶ 2.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                    /s/
_____

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

- 3 -

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Federal Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment, supporting memorandum, statement of facts and a proposed Order has been made through the Court's electronic transmission facilities on this 5th day of February, 2008.

/s/

W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT T. LEE, <u>et al.</u>,                )
                                             )
          Plaintiffs,                        )
                                             )
     v.                                      )  Civil Action No. 06-2184 JDB
                                             )
UNITED STATES OF AMERICA, <u>et al.</u>,     )
                                             )
          Defendants.                        )
_____    )

## CERTIFICATION

I, Rudolph Contreras, Chief of the Civil Division, Office of
the United States Attorney for the District of Columbia, acting
pursuant to the provisions of 28 U.S.C. § 2679(d), and by virtue
of the authority delegated to the United States Attorney by 68
Fed. Reg. 74187, 74189 (Dec. 23, 2003) (updating Attorney
General's delegation of authority, effective Jan. 22, 2004)
(codified at 28 C.F.R. § 15.4), and first redelegated to me on
March 20, 2006, hereby certify that I have read the Amended
Complaint in the above-captioned civil action, and that on the
basis of the information now available to me with respect to the
incident alleged therein, I find that Defendant Luis Arellano was
acting within the scope of his employment as an employee of the
United States at the time of the alleged incident.

_____
dated   1/16/08

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
Chief, Civil Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. LEE, *et al.* | ) |
| Plaintiffs, | ) |
| | ) Civil Action No.: 1:06CV02184 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, *et al.* | ) |
| Defendants. | ) |

## DECLARATION OF CECELIA E. BARRIOS

1.  I, Cecelia E. Barrios, declare that I am employed by the United States Capitol Police

(USCP) Office of the General Counsel (OGC) in the capacity of Paralegal Specialist. As

a Paralegal Specialist, I am called upon from time to time to obtain from the USCP

Communications Division recordings of radio communications between USCP

dispatchers and individual officers for a specified incident. To obtain a copy of radio

communications, a CP-411 Request for Copy/Review of Audio/Video Tape Recordings is

submitted to the USCP Communications Division for a specified time and date.

Subsequently, a copy of the taped radio communications for the requested period is

produced by the USCP Communications Division. On April 18, 2006, Scarlett D. Grose,

a former attorney in the OGC, obtained a copy of the radio communications generated

during the incident at issue on December 24, 2005 at approximately 1:15 a.m. This

incident involved a look-out that was broadcasted for a vehicle wanted in a carjacking

that had occurred earlier that day in Prince George's County, Maryland.

2.  I further declare that the OGC requested and obtained from the USCP Communications

Division on April 18, 2006, a true copy of the actual communications that transpired in

connection with the aforementioned incident.

3.    Further, this declaration is based on my personal knowledge of USCP procedures for creating and retaining radio recordings in the normal course of business, to include internal procedures for the request and production of USCP radio communications.

4.    The USCP Communications Division made copies of the official recording of radio communications for the date of December 24, 2005 and the time of approximately 1:15 a.m. in response to a request made by Scarlett D. Grose, OGC, on a CP-411 dated April 11, 2006.

5.    Prior to the commencement of the attached radio communications on or about 1:15 a.m., there had been a broadcast look-out for the carjacked vehicle involved in this incident that does not appear on the attached transcript.  Attached is the tape recording of the channel used by Officer Arellano from the time a look-out for the carjacked vehicle was broadcast immediately prior to Officer Arellano's sighting of a vehicle answering the description at approximately 1:15 a.m., through the time when Officer Arellano's sergeant requested a chronology of the event at approximately 2:09 a.m.  A transcript of this tape recording prepared by the OGC is attached to the declaration.


Under penalty of perjury, I declare that the foregoing is true and correct to the best of my knowledge, this 12th day of December, 2007.

_Cecelia E. Barrios_
Cecelia E. Barrios

2

Transcript of December 24, 2005 Radio Communications Tape

| | |
|---|---|
| Dispatcher: | Attention all units, attention all units, stand by to copy a look-out for an armed carjacking occurred in PG County.  Attention all units, attention all units, be on the look-out, vehicle is wanted in reference to an armed carjacking that occurred about 0045 hours from PG Plaza.  Look-out is for a red BMW convertible with D.C. tags Brown Yankee 1037, that will be Brown Yankee 1037, occupied by a black male 5 foot 7 with a moustache, wearing a gray jacket.  End of look-out at 0115 hours. |
| | Available Capitol unit for the Upper Terrace South Front for the intrusion alarm? |
| 114: | 114.  A red BMW heading eastbound Independence Avenue not stopping.  Would you alert other units in the area? |
| Dispatcher: | All right, sir.  You didn't happen to see the tags on the red BMW, did you? |
| 114: | D.C. tag Brown Young 1037.  Red BMW.  Eastbound Pennsylvania Avenue. |
| [Unidentified unit]: | Be advised, also m'am, for information only, it is a convertible and it's a high rate of speed. |
| Dispatcher: | Okay, that was the vehicle wanted in the armed carjacking that occurred at PG Plaza. |
| 114: | Armed carjacking.  Pennsylvania Avenue SE.  One and the same for the armed carjacking. |
| Dispatcher: | I copy, sir.  0117 hours. |
| [Unidentified unit]: | What way did it go, the vehicle, and where's it at? |
| Dispatcher: | That was eastbound on Pennsylvania Avenue.  It just blew past 114 on Pennsylvania Avenue. |
| 114(?): | Copy, m'am Pennsylvania Avenue SE wanted for armed carjacking. |
| [Unidentified unit]: | Are you still behind the vehicle? |
| Dispatcher: | 114. |
| 114: | 114.  I lost on Pennsylvania Avenue SE.  Appears to be going over possibly the bridge. |
| Dispatcher: | I copy, we'll notify Metropolitan.  Possibly going over the Sousa Bridge. 0118 |

hours.

| | |
|---|---|
| 220: | 220 |
| Dispatcher: | Unit 220. |
| 220: | [Unintelligible] |
| 114: | The bridge. We have three vehicles down. We have a...call an MT immediately. |
| Dispatcher: | I copy, we have an accident at the bridge? |
| 114: | 114. At the bridge. I've got one person down, unconscious, not breathing. On the bridge. |
| 157: | 157. |
| Dispatcher: | 157. |
| 157: | I am going to start down that way. |
| 114: | We've got two down, two unconscious, not breathing; we have two vehicles down. |
| Dispatcher: | I copy. D.C. Fire is being notified and Metropolitan is also responding. |
| 156: | 156. You can hold me out at the scene. [Unintelligible] Avenue. MPD is on the scene as well. |
| Dispatcher: | I copy. 156 is on the scene. 157 I need you to cover the avenue. Metropolitan is on the scene. |
| 156: | Copy. |
| 1297: | 1297 |
| Dispatcher: | 1297. |
| 146: | 146. We're going to need major crash out here and Metropolitan mobile crime. |
| Dispatcher: | I copy. Major crash. |
| 470: | 470. |

Dispatcher:    470.

470:    M'am hold me out with unit 486 responding to the Upper West Terrace, South Front.

145:    145. I'm not on the break.

Dispatcher:    Is that 145?

220:    220.

Dispatcher:    Unit 220.

220:    Hold me out at the scene, m'am. We're going to get traffic blocked at Kentucky Avenue and Pennsylvania Avenue. We're going to have to close this area. Trying to get this traffic backed out so we can see out and get this scene under control.

Dispatcher:    I copy. 0121 hours.

146:    146.

Dispatcher:    146.

146:    Everything is all [Unintelligible] up here on the Upper Terrace, South side. I don't have land-line capabilities to land-line IDS.

Dispatcher:    All right, we'll advise, sir.

    All right, any unit that is not involved with the accident in the 1600 block of Pennsylvania Avenue switch to channel 1. Any unit not involved with that, need for you to switch to channel 1. Everybody else with the accident remain on channel 2.

220:    220. Advise Metropolitan Pennsylvania Avenue and K Street. The bridge is going to be closed going eastbound. We've got it blocked off until we get the traffic cleared up.

Dispatcher:    I copy. Eastbound on Pennsylvania Avenue the bridge is going to be closed. 0123 hours.

114:    114.

Dispatcher:    114 go ahead.

114:                    114, m'am, advise my outside [Unintelligible]  I'll be held out here at the scene of
                       the accident.

Dispatcher:      I copy, sir, he's also there.  Unit 220's on the scene.

Dispatcher:      220, you copy?

220:                    220.  I copy.  I'm right now trying to get some of this traffic out so we can actually
                       get this vehicle to where he is.

Dispatcher:      I copy that, sir.  0123 hours.

[Unintelligible] portable:        [Unintelligible] portable.

Dispatcher:      Go ahead portable unit.

Portable unit:  I am going to shut down traffic on the Sousa Bridge coming off 395 so we can get
                       the traffic down here, so we can get the emergency medical people on the scene.

Dispatcher:      All right, I copy.  Give me your unit number again.

512:                    512, m'am, 512.

Dispatcher:      I copy, 512.

220:                    220.

Dispatcher:      220.

220:                    Uh, have the unit up there with 114 advise we need to move the ramp uh block the
                       ramp also from SW Freeway.

Dispatcher:      All right, any unit?  Any unit that's up there with 114 can advise.

[Unidentified unit]: That's going to be affirm.  We got a back-up coming from the freeway.

Dispatcher:      All right 220, that's affirmative.

                       They need the SE SW Freeway blocked also.

[Unidentified unit]:   Be advised Metropolitan units 151 and 153 are going to be responding
                       down to the SE Freeway and block that off the off ramp.

Dispatcher:      I copy.  DC 151 and 153 are going to block SE SW Freeway.  0125 hours.

|  | All right, 114. |
|---|---|
| 114: | 114. Go ahead. |
| Dispatcher: | All right sir, can you advise is the red BMW, is that stopped? |
| 114: | That's correct, m'am. The red BMW bearing DC tags Brown Young 1037, a red BMW convertible Z4. |
| Dispatcher: | All right, is the driver of the vehicle, is the driver with that vehicle? |
| 114: | M'am the driver of the vehicle is here with the vehicle, um unconscious, not breathing and not moving or like that. |
| Dispatcher: | All right, I copy. |
| 220: | 220. Be advised DC Fire is on the scene. We have one engine there, we got two ambulances just pulled up on the scene, uh I didn't get the numbers though. |
| 146: | 146. |
| Dispatcher: | 146. |
| 146: | 146 uh going to be ambulance 8, 19 and engine 19 on the scene. |
| Dispatcher: | 0128 hours. |
| 220: | 220. |
| Dispatcher: | 220. |
| 220: | Okay, advise units on Independence Avenue [Unintelligible] right now go ahead and get the available car located in the radio room and take that down and go ahead [Unintelligible] |
| Dispatcher: | Units on Independence Avenue? |
|  | All right, I'll raise him on the other channel, Sarge. |
| [Unidentified unit]: | All right, thank you. |
| 3-60: | 3-60. Do you need something on Independence Avenue? |
| [Unidentified unit]: | Any..[Unintelligible]...at that location...[Unintelligible]. |

| | |
|---|---|
| 294: | 294. |
| Dispatcher: | 294. |
| 294: | [Unintelligible] |
| Dispatcher: | I copy, additional. |
| | Um, 294 if you just routine switch to channel 1. Anybody associated with the accident on the Sousa Bridge is going to be operating on this channel. |
| 294: | [Unintelligible] 10-99. |
| 3-60: | 3-60 to dispatch. |
| Dispatcher: | 3-60 go ahead. |
| 3-60: | Okay, m'am. I was unable to copy Sergeant Ikard's request. Does he have a land-line I can contact him? |
| 220: | 220 with a message. |
| Dispatcher: | Go ahead 220. |
| 220: | We're going to have him take114's position until we get some of this [Unintelligible.]it's going to be a little while. So if he could go ahead and stand down at his location that would be appreciated. |
| Dispatcher: | 3-60? |
| 3-60: | 3-60, I copy. I'll hold down until I leave. |
| Dispatcher: | Many thanks, sir. 0133 hours. |
| | Additional, 3-60 switch back to channel 1, 3-60? |
| 3-60: | I copy, m'am, I'm running Georgetown at this time. |
| Dispatcher: | I copy. |
| 512: | 512. |
| Dispatcher: | 512. |

512:            You can clear my last sufficient units down there.

Dispatcher:     I copy, 512. 0136.

145:            Canine 145.

Dispatcher:     145.

145:            M'am, I'm clear of the scene back on the grounds.

Dispatcher:     I copy, sir.  0137 hours.

Unit 7:         Unit 7.

Dispatcher:     Unit 7.

Unit 7:         Give me a run-down of who the US Capitol Police units that are still located at the Sousa Bridge.

Dispatcher:     All right.  Unit 220, 114, 150...160 is still there.  145 is clear.  156?  I have 156 still held there and 151.

                Unit 7, copy?

Unit 7:         Unit 7 copy.

Dispatcher:     Unit calling?

3-60:           3-60 out.

Dispatcher:     I copy, sir.  0141 hours

124:            124.

Dispatcher:     124.

124:            Clear myself and 121 from 400 block of New York Avenue NW.  Individual has been turned over to the guardian. Notebook information.  Advise Weaver I'll contact him later, I know he's busy.

Dispatcher:     0145 hours.

                110?

110:            110. I copy.  Can you raise 160 if you have an alternate, please?

Dispatcher:     Unit 160 for channel 3.

160:            160.  Copy.

156:            156.

Dispatcher:     156.

156:            Clear from 10-50.  I'm responding back to the Hill.

Dispatcher:     I copy.  0147 hours.

146:            146.

Dispatcher:     146.

146:            I am clear so I'm 10-8.

Dispatcher:     I copy, sir.  0147 hours.

Wagon 1:        Wagon 1.

Dispatcher:     Wagon 1.

Wagon 1:        Yes, m'am.  Hold us out at the [Unintelligible] taking a report.

Dispatcher:     I copy.  0149 hours.

157:            157.

Dispatcher:     157.

157:            Westbound on it's  going to be Independence Avenue.  Could you run a Virginia
                tag for me?

Dispatcher:     Go ahead.

157:            Virginia John Brown Sam 9646.  Passenger vehicle.

114:            114.

Dispatcher:     114.

114:            M'am did the [Unintelligible] BMW come back one and the same as the vehicle out of PG County that you know of?

Dispatcher:     All right, sir, seeing as how the offense has occurred it didn't come back to the WALES record.  It is giving the listed owner of the vehicle.

114:            Okay, m'am. [Unintelligible]

Dispatcher:     0152 hours.

Dispatcher:     All right, 114 additional it hasn't been entered into NCIC as of yet.

114:            I didn't hear your last, would you repeat last, please?

Dispatcher:     All right, sir.  It hasn't been entered into NCIC.

114:            [Unintelligible].

Dispatcher:     All right, sir.  0152 hours.

                157?

157:            157.

Dispatcher:     John Brown Sam 9646 on Virginia comes back on a '93 Toyota 12 of 06.  No record.

157:            Thank you, m'am.  I'll be 10-8.  Nothing further.  0152 hours.

512:            512.

Dispatcher:     512.

512:            You can hold me out at 57 Poplar check. I'll advise when I clear.

Dispatcher:     0153 hours.

Unit 7:         Unit 7.

Dispatcher:     Unit 7.

Unit 7:         Can you have 220 contact me when he can?

Dispatcher:     Unit 220?

220:            220, could you repeat?

Dispatcher:     All right, sir.  When you get a chance land-line unit 7.

220:            I copy.

Dispatcher:     0154 hours.

123:            123.

Dispatcher:     123.

123:            Hold me northbound on 3rd 200 block of SE for the 28 traffic when you are ready.

Dispatcher:     Go ahead.

123:            Virginia J John E Edward X X-ray 9213 on a Ford pick-up truck occupied one time.

124:            124.

Dispatcher:     124.

124:            Where's Parrish(?) at does he have back-up?

Dispatcher:     122?

123:            123. I got a unit behind me and uh, we're sitting here at the red light at 3rd and Penn.  I'll advise when I have him stopped.

Dispatcher:     All right, 123.  That was John Edward X-ray 9213?

123:            That's affirmative.

Dispatcher:     That comes back on a 2003 Ford pick-up expires 6 of 07 to the last name of Reynolds.  No record.

123:            Copy.  I'm going to have the vehicle stopped here 200 block Independence Avenue, SE.  I'm 10-4 with looks like the unit with McKeown(?).

Dispatcher:     0158 hours.

124:            124.

*Transcript December 24, 2005 tape*                              *Page 11*

| | |
|---|---|
| Dispatcher: | 124. |
| 124: | Northbound 3rd Street from East Capitol run Maryland tag 2 Adam Time Robert 78. Should come back on a silver Buick. |
| Dispatcher: | I copy, Maryland tag stand by. |
| | 124? |
| 124: | Yes, m'am. |
| Dispatcher: | That comes back on a '92 Buick. It's showing expiration date of 4 19 of 06. Listed owner is John Henry Drew the Third. |
| 124: | [Unintelligible]. Have 157 go to 3 please. |
| Dispatcher: | 157? |
| 123: | 123. |
| Dispatcher: | 123. |
| 123: | 27/29 on the owner when you are ready. |
| Dispatcher: | Go ahead. |
| 123: | Virginia license number A Adam 24637494 ah, white male, date of birth 07-27-1963. |
| Dispatcher: | All right, Christopher John Reynolds. He has a permit expires 07-27 of 08. No record. |
| 123: | Copy, additional. |
| Dispatcher: | 0202 hours. |
| | 220? |
| 220: | 220. |
| Dispatcher: | All right, sir, um, we just got off the phone with PG County. It was...the vehicle was taken in the armed carjacking. Uh, they have report numbers if you need those or if 114 may need them. PG County is going to be calling you shortly. |

| | |
|---|---|
| 220: | Okay, I copy. Give me a land-line. Do you got my number? |
| Dispatcher: | Sir, you want them to call you at the House Division or do you want them to call you on the cell phone? |
| 220: | They're going to have to call me on the cell phone. I'm here at the scene. The number is (202) 498-8205. |
| Dispatcher: | Also, I have PG County report numbers if you want those. |
| 220: | That's affirmative. Go ahead, m'am. |
| Dispatcher: | All right, that will be 053580064. |
| 220: | Okay, m'am I copy 053580064? |
| Dispatcher: | That's correct, sir. |
| 220: | I copy, m'am. Give us additional time. |
| Dispatcher: | All right, sir. You have additional time at 0204 hours. |
| Scout 122: | Scout 122. |
| Dispatcher: | Go ahead, 122. |
| 122: | All right, sir. You can clear everybody from New Jersey and K. We'll be 10-8. You can hold me responding back to Processing to assist with paperwork. |
| Dispatcher: | At 0208. |
| 220: | 220. |
| Dispatcher: | Unit calling? |
| 220: | 220. |
| Dispatcher: | Go ahead, 220. |
| 220: | Sir, if you didn't already could you forward a chronology over to the House Division fax number please? |
| Dispatcher: | I copy, sir. I'll check with the previous dispatcher. See if they've already done that. |

220:            Copy, thanks.

Dispatcher:     0209 hours.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. LEE, *et al.* | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Civil Action No.: 1:06CV02184 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DECLARATION OF CECELIA E. BARRIOS

1.    I, Cecelia E. Barrios, declare that I am employed by the United States Capitol Police (USCP) Office of the General Counsel (OGC) in the capacity of Paralegal Specialist. As a Paralegal Specialist, I am called upon from time to time to accept service on suits filed against the USCP as an agency.

2.    While I am authorized to accept service for the USCP as an agency, I am not and never have been authorized to accept service on behalf of any USCP employee against whom a Court claim has been filed in their individual capacity, to include, in this instance, Officer Luis Arellano.

3.    Further, this declaration is based on my personal knowledge of USCP procedures for acceptance of service.


Under penalty of perjury, I declare that the foregoing is true and correct to the best of my knowledge, this 18th day of January, 2008.


_Cecelia E. Barrios_
Cecelia E. Barrios

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT T. LEE, <u>et al.</u>,          )
                                       )
         Plaintiffs,                   )
                                       )
     v.                                ) Civil Action No. 06-2184 JDB
                                       )
UNITED STATES OF AMERICA, <u>et al.</u>, )
                                       )
         Defendants.                   )
_____)

<u>ORDER</u>

Upon consideration of the Federal Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment, the grounds stated therefore, and the entire record herein, it is this ___ day of _____, 2008, hereby

ORDERED that the motion should be and it hereby is granted; and it is,

FURTHER ORDERED that this action be and hereby is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE


W. MARK NEBEKER
Assistant U.S. Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530

JEANETT P. HENRY, ESQ., Bar #411052
8701 Georgia Avenue; Suite 403
Silver Spring, MD 20910