# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT T. LEE, et al.,** | |
| **Plaintiffs,** | |
| v. | **Civil Action No.  06-2184 (JDB)** |
| **UNITED STATES OF AMERICA, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiffs Robert T. Lee[1] and Alyce Summers bring this action against the United States of America, Officer Luis Arellano of the U.S. Capitol Police, and other John Doe officers of the U.S. Capitol Police.  Plaintiffs seek compensatory and punitive damages under the five remaining counts[2] alleged in their amended complaint: Count II (Federal Tort Claims Act)

---

[1] Lee is the father of Jewell West, who was killed during the events at issue.  Am. Compl. ¶ 4.  He brings this suit both individually and as the personal representative of his daughter's estate.  Id.

[2] The plaintiffs had also alleged a deprivation of their constitutional rights without due process under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  However, they voluntarily dismissed their Bivens claim before the defendants' filed this motion.  See Dkt. No. 36, Notice of Dismissal at 1.

("FTCA")), Count III (Survival Act),[3] Count IV (Wrongful Death),[4] Count V (Gross Negligence), and Count VI (Assault and Battery).  Am. Compl. ¶¶ 26-41.  Defendants[5] move to dismiss all of the remaining counts of this action for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted.  Defs.' Mot. at 1.  In the alternative, defendants move for summary judgment.  Id.  Upon careful consideration of the motion, the parties' memoranda, the applicable law, and the entire record, and for the reasons set forth below, the Court will deny the defendants' motion.

## **BACKGROUND**

On the night before Christmas Eve in 2005, Jewell West and Alyce Summers accepted a ride from a man driving a 2003, 2-door Z4 BMW in the District of Columbia.  Am. Compl. ¶¶ 9-10.  Unbeknownst to Summers and West, this man had stolen the vehicle during an armed carjacking about half an hour earlier.  Id. ¶ 10  As the car drove in the area of Washington Avenue, SW, Officer Arellano attempted to initiate a stop of the vehicle for an alleged traffic

---

[3] Plaintiffs purport to assert a claim under the Survival Act pursuant to D.C. Code § 12-201, a section that does not exist.  In fact, the District of Columbia Survival Act is found in D.C. Code § 12-101.  The Court will overlook this error and treat plaintiffs' claim as if they identified the correct statutory authority.

[4] Plaintiffs refer generally to "the wrongful death statutes of the District of Columbia" in their amended complaint.  Am. Compl. ¶ 33.  Presumably, they are denoting D.C. Code § 16-2701.

[5] Defendants note that the counsel responsible for this motion do not currently represent the John Doe officers.  Defs.' Mot. at 1 n.1.  However, the motion contends that the same arguments would apply to these presently unnamed defendants, and the Court could dismiss the claims against them sua sponte if the Court concludes that dismissal is appropriate.  Id.  Because the Court does not find dismissal appropriate, it is unnecessary to consider the issue.

violation.  Id. ¶ 11.  The driver did not stop, so Arellano pursued the vehicle.  Id.  At some point early in the pursuit, if not before it had even started, Arellano received word from the dispatcher that the car at issue was the same car that had been carjacked earlier.  See Defs.' Mem. at 2; Dec. 12, 2007 Declaration of Cecelia E. Barrios ("Barrios Decl.") ¶¶ 4-5; Dec. 24, 2005 Radio Transcript ("Radio Transcript") at 1.  Arellano pursued the driver, with both driving at speeds of more than eighty miles per hour, in areas where the posted speed limit was only twenty-five miles per hour.  Am. Compl. ¶ 12.  Other John Doe officers of the U.S. Capitol Police joined the chase as well.  Id. ¶ 14.  The officer lost sight of the vehicle somewhere on Pennsylvania Avenue.  See Barrios Decl. ¶¶ 4-5; Radio Transcript at 1-2.  The carjacker eventually lost control of the vehicle at the Sousa Bridge on the 1700 block of Pennsylvania Avenue, SE, striking the curb on both sides of the street and a light pole.  Am. Compl. ¶ 17.  As a result of the collision, West was ejected from the car and killed, while Summers sustained serious non-life-threatening injuries.  Id. ¶¶ 18-19.

Plaintiffs filed their administrative claims with the United States Capitol Police as required by the FTCA on December 22, 2006.  Id. ¶ 3; see 28 U.S.C. § 2675.  The Capitol Police issued a decision denying plaintiffs' claims on May 7, 2007.  Am. Compl. ¶ 3.  Now the plaintiffs come to this Court, contending that their harm was the direct and proximate result of defendants' high speed chase with the BMW.  See id. ¶¶ 25, 29, 34, 38, 41.  They seek compensatory and punitive damages.  Id. ¶ 1.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should

be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see

Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips

v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). Therefore, the factual allegations must

be presumed true, and plaintiff must be given every favorable inference that may be drawn from

the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion

couched as a factual allegation," nor inferences that are unsupported by the facts set out in the

complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting

Papasan v. Allain, 478 U.S. 265, 286 (1986)).

　　　　Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court --

plaintiffs here -- bears the burden of establishing that the court has jurisdiction. See US Ecology,

Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal

Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney

Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's

factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion'

than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at

13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the

complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the

factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d

1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-

-4-

25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all

that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl.

Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355

U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per

curiam). "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." Browning v.

Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Thus, the complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1965

(citations omitted).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its

motion by identifying those portions of "the pleadings, the discovery and disclosure materials on

file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material

fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.[6]

## DISCUSSION

### I.    Substitution of the United States as Sole Defendant

Before the Court takes up the merits of defendants' motion to dismiss, there is a preliminary matter concerning the identity of the defendants.  Defendants argue that the United States must be substituted as the sole defendant on all remaining claims.  Defs.' Mem. at 4.  The Court agrees.

The FTCA was designed to make civil actions against the United States the exclusive remedy for torts committed by federal employees within the scope of their employment, conferring absolute immunity on the employee.  See 28 U.S.C. § 2679(b).  The FTCA allows for substitution of the United States as the exclusive defendant if federal employees are sued for tort

---

[6] This Memorandum Opinion does not include the standards of review for motions to dismiss on grounds of lack of personal jurisdiction, insufficient process, and insufficient service of process.  Those issues with respect to Officer Arellano become moot once the Court substitutes the United States as the defendant.  See note 9, infra.  Thus, there is no need for the court to review those issues here.

claims arising out of actions taken within the scope of their federal employment.  Id. § 2679(d).[7]

The statute states that the substitution shall occur as long as the Attorney General, or his

delegate, certifies that the employee was acting within the scope of his office or employment at

the time of incident out of which the claim arose.  See id.; 28 C.F.R. § 15.4 (authorizing the

United States Attorney to make the statutory certification).  Defendants provide the required

certification signed by Assistant U.S. Attorney Rudolph Contreras.  Certification at 1.[8]  Plaintiffs

concede this point: they did not contest the certification in their opposition to the motion, and

they even acknowledge that Officer Arellano was acting within the scope of employment at the

time of the incident.  Am. Compl. ¶ 7.  Finding the certification valid, the Court substitutes the

United States as the defendant for Officer Arellano.[9]  The Court will now consider the remainder

---

[7] Such a substitution precludes plaintiffs from recovering any punitive damages.  See 28 U.S.C. § 2674 ("The United States . . . shall not be liable for interest prior to judgment or for punitive damages.").  Attorney's fees are paid out of the plaintiffs' judgment and cannot exceed twenty-five percent of the recovery.  See id. § 2678.  Further, the action will be tried by the court without a jury.  See id. § 2402.

[8] The Assistant U.S. Attorney's certification only applies to Officer Arellano.  There is no mention of the other John Doe defendants.  Plaintiffs do not question that these officers were also acting within the scope of their employment at the time, Am. Compl. ¶ 8, but the decision is not theirs to make.  It is up to the Attorney General to decide whether to confer immunity upon the defendant employees.  28 U.S.C. § 2679(d)(1).  If the Attorney General refuses to certify the scope of employment, then the defendant employees may petition the Court at any time before trial to make the certification.  Id. § 2679(d)(3).  Unless the John Doe officers' scopes of employment are certified or the officers are otherwise dismissed, they will remain defendants in this action.  The Court recognizes, however, that from a practical perspective this case is likely to proceed against the United States with no further activity involving the John Doe defendants.

[9] Defendants contend that if the certification was successfully challenged, the claims against Officer Arellano are still untimely and were not properly served upon him.  Defs.' Mem. at 14.  Because the United States is substituted for Officer Arellano, issues related to him as an individual defendant are moot, and the Court takes no view on them.  Thus, there is no need for the Court to consider defendants' motion to dismiss on grounds of lack of personal jurisdiction, insufficient process, and insufficient service of process.

of the motion on its merits with the United States as the sole defendant.

## II.    Motion to Dismiss

### A.    Subject Matter Jurisdiction

This Court only has subject matter jurisdiction to hear a civil action against the United States when the United States has waived its sovereign immunity.  See United States v. Orleans, 425 U.S. 807, 814 (1976).  Under the FTCA, which is such a waiver, the United States is liable for torts committed by its agents "to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  This liability is defined "in accordance with the law of the place where the act or omission occurred," here the District of Columbia.  Id. § 1346(b).[10]  The Supreme Court has interpreted this language to mean that the United States waives sovereign immunity under circumstances where local law would make a private person liable in tort.  See Orleans, 425 U.S. at 813; Hudert v. Alion Sci. & Tech. Corp., 429 F. Supp. 2d 99, 106 (D.D.C. 2006).  Thus, the question for this Court to resolve is whether plaintiffs have asserted a claim against the United States that would be the basis for finding tort liability against a private individual in the District of Columbia.  Hudert, 429 F. Supp. 2d at 106.

Defendant argues that all of the remaining counts must be dismissed because there is no law in the District of Columbia analogous to "a claim of negligent or wrongful police pursuits." Defs.' Reply at 4.  But this Court does not write on a blank slate: the D.C. Circuit has addressed this issue before in Hetzel v. United States, 43 F.3d 1500 (D.C. Cir. 1995).  There, the United States was sued by plaintiffs who sustained injuries in a collision with a car that was being

---

[10] Although the car was stolen from Prince George's County, Maryland, the tortious act alleged here and the subsequent harm occurred in the District of Columbia.

pursued at a high speed by a federal officer. Id. at 1502. The D.C. Circuit adopted an approach in Hetzel promulgated by some other courts, notably the Ninth Circuit. This approach "abandon[s] the private individual analogy and look[s] to the standards of care applicable to government employers under state law" when considering FTCA liability for law enforcement actions. Id. at 1503-04.

Recently, however, the Supreme Court explicitly reversed one of the precedents that the court had primarily relied upon in adopting its approach in Hetzel. See United States v. Olson, 546 U.S. 43, 44 (2005) (reversing, inter alia, Doggett v. United States, 875 F.2d 684 (9th Cir. 1989) ("It is difficult to analyze the United States' liability for actions involving unique governmental functions by simply considering the potential liability of private citizens under state law. In such cases this court has sought to determine what liability state law attaches to similar activities undertaken by analogous entities subject to its jurisdiction.")). In Olson, the Court unequivocally held that the "performance of uniquely governmental functions" is not a relevant factor when looking for an analogous local law under FTCA. See id. at 46 (quoting Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955)) (internal quotations omitted). The Court affirmed the importance of the plain words of 28 U.S.C. § 1346(b), which state that sovereign immunity is only waived "under circumstances where the United States, if a private person" would be liable, not "if a state or municipal entity" would be liable. Olson, 546 U.S. at 45-46. The standard for tort liability under the FTCA, then, must be found in local laws applying to private citizens, not government employees.[11]

_____

[11] The FTCA offers additional protections to potential plaintiffs beyond allowing suits to proceed when there is a suitable private analogue in local law. For instance, employees do not receive immunity when they are acting outside the scope of their duties. See 28 U.S.C. §

This Court must decide now whether removing one precedential leg from Hetzel makes the whole case collapse. Upon careful consideration, the Court finds that it does. The decisions of the D.C. Circuit are binding "unless and until overturned by the court en banc or by Higher Authority." Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc) (citation omitted). "The doctrine of stare decisis compels district courts to adhere to a decision of the Court of Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the United States sees fit to overrule the decision." Owens-Ill., Inc. v. Aetna Cas. & Sur. Co., 597 F. Supp. 1515, 1520 (D.D.C. 1984); see also Anselmo v. King, 902 F. Supp. 273, 276 n.2 (D.D.C. 1995). Although this Court is loath to upset a judgment of the D.C. Circuit, in the end the Court is bound by the Supreme Court's rulings. See Hutto v. Davis, 454 U.S. 370, 375 (1982) ("[A] precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). The Supreme Court has not addressed Hetzel itself, but the approach adopted by the court in Hetzel is the same approach followed by the Ninth Circuit in Doggett and explicitly reversed by the Supreme Court in Olson. This Court will attempt to reconcile all of the judgments binding upon it if possible, see La. Envtl. Action Network v. Browner, 87 F.3d 1379, 1383 (D.C. Cir. 1996) (citing Gersman v. Group Health Ass'n, Inc., 975 F.2d 886, 897 (D.C. Cir. 1992)), but when holdings of the Supreme Court and the D.C. Circuit are irreconcilable, the Supreme Court's decision will trump every time. In light of the Supreme Court's decision in Olson, then, Hetzel can no longer be considered good law.

---

2679(b)(1). And, the FTCA allows Bivens claims to proceed simultaneously with FTCA actions. See Carlson v. Green, 446 U.S. 14, 20 (1980).

Although the Hetzel court had been looking for a government analogue, they nonetheless stated that "[n]o private individual has the authority to engage in a high-speed chase of a suspected felon as occurred here, and thus there is no readily available private analogue [in District of Columbia law] upon which to premise liability under the FTCA." Hetzel, 43 F.3d at 1503. The United States cites this passage for the proposition that the result in today's case is "preordained." Defs.' Mem. at 9. However, the Supreme Court indicated in Olson that courts should view the facts broadly when searching for an analogy in local law. Olson, 546 U.S. at 46. Courts need to consider "like circumstances" when looking for an analogous private action, not necessarily the "same circumstances." Id. (emphasis omitted); see also Indian Towing Co., 350 U.S. at 64. A fitting private analogue for the present case may be found if the facts are cast in a different light.

Plaintiffs contend that the District of Columbia's clear requirement that private individuals obey traffic laws when operating their vehicles, including regulations against speeding, is an appropriate private analogue. See Pls.' Opp'n at 3; D.C. Mun. Regs. tit. 18, § 2200.4 (2008) ("In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street or highway in compliance with legal requirements and the duty of all persons to use due care.") (emphasis added). The Court agrees. District of Columbia law requires all drivers to obey generally applicable traffic regulations. See D.C. Mun. Regs. tit. 18, § 2000.1.[12] It does not require the

_____

[12] Although the applicability of the District of Columbia's regulations to government employees is not directly relevant for FTCA purposes in the wake of Olson, the Court notes that the regulations explicitly apply to the drivers of all vehicles owned and operated by the United States and other government entities. D.C. Mun. Regs. tit. 18, § 2001.1. The regulations specifically exempt certain drivers in pursuit of suspects from some traffic rules, see id. at §

Court to look too far afield to see that this requirement is a suitable analogue for an FTCA action.

See Olson, 546 U.S. at 46. The United States can be held liable for breaching this duty just as a

private person could.

The United States challenges the application of this standard by alleging that "attempts to

analogize the facts here to a typical drive through the streets of the city are misplaced." Defs.'

Reply at 4. This Court is cognizant of the United States' concerns for the ramifications of this

approach for law enforcement. But the Court is nonetheless bound to consider the circumstances

as if the United States were a private individual. If a private person could be held liable for such

actions, then the United States can be as well. The provisions of the FTCA at issue today do not

distinguish between different types of federal employers, regardless of whether the actor is a

federal police officer or a federal mine inspector, as in Olson. The United States has failed to

---

2002.1(b), but such drivers are still subject to the general "duty to drive with due regard for the safety of all persons," see id. at § 2002.4.

The Court also notes that District of Columbia law has specific provisions regarding municipal government immunity. See D.C. Code § 2-412. The District of Columbia waives sovereign immunity for claims seeking monetary damages on account of personal injury or death caused by the negligent or wrongful act of any District employee occurring as the result of the operation by such employee, within the scope of his office or employment, of a vehicle owned or controlled by the District. Id. This waiver is partially qualified, however, such that in the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence. See id.; Hetzel 43 F.3d at 1504 (noting that the proviso is "nothing more than a qualification to the general waiver of governmental immunity expressed in the first part of § [2-412]."). A partial waiver of the District's immunity does not necessitate a full, or even a partial, bar to the United States' liability. See Hetzel, 43 F.3d at 1504.

As a result, the United States will be held to the standard of due care for police chases in the District, even though the District itself is held to a lesser standard, only facing liability when such conduct reaches the level of gross negligence. The Court recognizes that the United States may be held liable for conduct for which the District is immune, but this result must follow from the Supreme Court's interpretation of the FTCA in Indian Towing, an interpretation that Congress has let stand for more than fifty years notwithstanding its willingness to limit the United States' liability under the FTCA in other contexts, id. at 1505 & n.9, and from the recent ruling in Olson.

provide an adequate reason why the conduct of these police officers should be exempt from the FTCA's reach.[13]

In light of the Supreme Court's rulings, and unless Congress amends the statute, the United States will be held to a negligence standard for the conduct of the U.S. Capitol Police in this case. This Court is not alone in so holding: other federal courts have already found that the United States may be held liable for the negligent conduct of federal police officers. See Holthusen v. United States, 498 F. Supp. 2d 1236, 1240 (D. Minn. 2007); Schreiner v. United States, No. 03-5069, 2005 U.S. Dist. LEXIS 36641 (D.S.D. July 18, 2005) (subjecting the officer's conduct to a negligence analysis, but ultimately finding the officer not negligent). Indeed, in Hetzel the D.C. Circuit held the United States to a negligence standard for the conduct of federal officers. Hetzel, 43 F.3d at 1505. The D.C. Circuit court has also previously held (in a case that is still good law) that the proper standard of care to be applied to felony stop and pursuit in the District of Columbia is due care. Biscoe v. Arlington County, 738 F.2d 1352, 1363 (D.C. Cir. 1984). The Biscoe court even specifically rejected an argument that the defendant in that case should only be subject to a gross negligence standard instead of the more stringent negligence standard. Id. at 1364 (recognizing that the regulation requiring a gross negligence standard was limited to "District liability for damages caused by District vehicles" and does not apply to other government entities or individuals).[14] Rereading Biscoe in light of the Supreme

---

[13] The FTCA provides some specific exceptions, but none are applicable here. For instance, civil actions based on the exercise of a discretionary function or duty are barred, 28 U.S.C. § 2680(a), but the United States did not raise this point. The Court takes no position on the application of this exception to the present case.

[14] The defendant in Biscoe was Arlington County and their police department, not the United States. Biscoe, 738 F.2d at 1354. However, the court's decision that the gross negligence

Court's subsequent decision in <u>Olson</u> only confirms that the negligence standard applies to law enforcement conduct in FTCA actions.

Although the United States will be held to a negligence standard just as a private person would, what may be reasonable for police officers may not always be reasonable for ordinary citizens. <u>See</u> <u>Speaks v. Dist. of Columbia</u>, No. 03-1965, 2006 U.S. Dist. LEXIS 16776, at *24-25 (D.D.C. April 6, 2006). A police officer's job requires him or her not only to take certain risks that would not be appropriate for ordinary people to take, but also to decide in a split second whether to take those risks. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.") (analyzing the reasonableness of the use of force by a officer in the Fourth Amendment context). However, officers are still obligated to take due care when exercising these great responsibilities. They must balance the immediate need to apprehend the suspects they pursue and the risks that such a pursuit will present to everyone involved. <u>See</u> <u>Dist. of Columbia v. Walker</u>, 689 A.2d 40, 45 (D.C. 1997). In an FTCA action alleging a negligent police chase in the District of Columbia, the standard of care is that of a reasonably prudent police officer. <u>See</u> <u>Holder v. Dist. of Columbia</u>, 700 A.2d 738, 742 (D.C. 1997).

  B.    *Failure to State a Claim*

The United States also moves for dismissal under Rule 12(b)(6). Defs.' Mem. at 9.

---

standard is expressly limited to the District of Columbia government applies whether the defendant is another municipal government, the federal government, or even an individual.

However, their argument simply consists of a broad restatement of the law following Twombly without any specific application to plaintiffs' complaint. Id. at 9-11. The United States does not appear to challenge the sufficiency of their claims based on District of Columbia law, resting their motion entirely on an assessment of the FTCA. Construing the complaint liberally in plaintiffs' favor, the Court finds that plaintiffs have alleged sufficient facts to state the tort claims they allege.

### III.    Motion for Summary Judgment

In the alternative, the United States seeks summary judgment. Def.'s Mem. at 11. The United States has specifically identified a list of seven facts, which it contends are material facts as to which there is no genuine dispute. See Defs.' Statement of Material Facts As To Which There Is No Genuine Dispute ("Defs.' Stmt."). In its motion, the United States warned plaintiffs that "any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless [p]laintiffs submit affidavits or other documentary evidence contradicting the assertion in the documents." Defs.' Mot. at 1 n.3 (citing Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992)). This announcement afforded sufficient notice to plaintiffs as to the consequences of their failure to address these facts, especially considering that the notice requirement was designed to protect pro se plaintiffs unfamiliar with Rule 56. See Neal, 963 F.2d at 456; Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982). Plaintiffs failed to address all of these facts, much less dispute any of them.[15] Therefore, those facts identified by the United

---

[15] In their opposition to the United States' motion, plaintiffs did include a list of five facts, which they contend are material disputed facts. Pls.' Statement of Material Disputed Facts ("Pls.' Stmt."). However, none of these assertions actually dispute any of those facts put forth by the United States.

States that plaintiffs did not contest will be accepted as true for the purposes of summary judgment.[16]  The Court's acceptance of these facts, however, does not preclude a finding that summary judgment is inappropriate here if there nonetheless remains a genuine issue as to other material facts.

The United States contends that summary judgment is appropriate because the officer was acting reasonably.  See Defs.' Mem. at 11.  Plaintiffs allege that it was unreasonable and against department regulations for the officer to pursue the car at high speed for a traffic violation.  See Am. Compl. ¶ 27.  However, the officer was not pursuing the car solely for a traffic violation. The United States provides a tape recording and accompanying transcript, which plainly show that Officer Arellano knew that the vehicle he was pursuing was the same one that had been stolen in an armed carjacking about thirty minutes earlier.[17]  Plaintiffs admit this point.  Pls.'

---

[16] One of the facts identified by the United States is no longer relevant for the Court's purposes because Officer Arellano is no longer a named defendant.  Defs.' Stmt. ¶ 2.  The remaining facts suggested by the United States that the Court will deem admitted are: 1) the events described in the Amended Complaint in this action took place on December 24, 2005, at approximately 1:15 a.m.; 2) toward the beginning of the police chase that is alleged in the Amended Complaint, Officer Arellano received a radio broadcast which was tape recorded and which is accurately transcribed in the Radio Transcript accompanying the December 17, 2007 Declaration of Cecelia E. Barrios; 3) toward the beginning of the police chase that is alleged in the Amended Complaint, Officer Arellano received a radio broadcast which advised him from the outset that the 2003 BMW Z4 with DC license tags BY 1037 was wanted in an armed carjacking that occurred approximately thirty minutes earlier; 4) the December 24, 2005 chase of the BMW automobile described in the Amended Complaint lasted approximately two minutes; 5) as described on the tape recording of the events around 1:15 a.m. on December 24, 2005, Officer Arellano (Unit 114) had lost the 2003 BMW Z4 with DC license tags BY 1037 while he was still on Pennsylvania Avenue, but before the vehicle crashed at the Sousa Bridge; and 6) the 2003, 2-door BMW Z4 with DC license tags BY 1037, which is described in the Amended Complaint, had only two seats, one for a driver and one for a passenger.  Defs.' Stmt. ¶¶ 1, 3-7.

[17] The tape is certified by a paralegal specialist of the United States Capitol Police Office of the General Counsel as "a true copy of the actual communications" that occurred during the event in question.  Barrios Decl. ¶ 2.  Plaintiffs do not contest the authenticity of the tape and

Opp'n at 4; see also note 16, supra. It is not entirely clear, however, exactly when Officer

Arellano acquired this knowledge in relation to when he began pursuing the car at high speed.[18]

But regardless of when he began driving at a high speed, it is undisputed that the collision did not

happen until after Officer Arellano had such knowledge. Defs.' Mem. at 2; Pls.' Opp'n at 4.

Even assuming that the officer initially pursued the suspect at high speed only for a traffic

violation, then, the officer had more information by the time the harm actually occurred. This

additional information changes the calculus of reasonable care. Even if the officer's conduct was

negligent at first, it may have been entirely reasonable by the time the harm occurred. See

Walker, 689 A.2d at 46 ("Even assuming solely for the purpose of argument but not deciding that

the officers were grossly negligent at an earlier point in the pursuit . . . , such gross negligence

did not in itself cause any injury."). Thus, the Court will consider whether the officer's pursuit

was negligent once he had the knowledge that he was pursuing an armed carjacker.

        With that caveat, the Court must now consider all of the circumstances apparent to the

officer at the time of the pursuit to determine whether he was acting reasonably, viewing all the

facts and reasonable inferences in the light most favorable to plaintiffs as the non-moving party.

See Anderson, 477 U.S. at 255. The Court concludes that a fact-finder could reasonably find that

---

accompanying transcript.

        [18] At some point before Officer Arellano attempted to initiate a traffic stop of the vehicle,
the police dispatcher broadcast a description of the stolen vehicle. See Defs.' Mem. at 2; Barrios
Decl. ¶¶ 4-5; Radio Transcript at 1. It is not clear to the Court if Officer Arellano began pursuing
the vehicle before the dispatcher could confirm it was the stolen car or if Officer Arellano already
had this knowledge because he remembered the earlier broadcast. Assuming that Officer
Arellano did not know that he was pursuing a stolen car at first, it is also unclear to the Court
whether he pursued at a high speed initially or instead only began pursuing at high speed once he
learned that the vehicle was stolen by an armed man.

the officer's conduct was negligent under District of Columbia law.[19]

In any negligence claim, the plaintiff must establish "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." Toy v. Dist. of Columbia, 549 A.2d 1, 6 (D.C. 1988) (internal quotation and citations omitted). As the Court has shown already, the applicable standard of care here is that of a reasonable police officer. But the reasonableness of a police officer's decision in a particular situation is not determinable through common lay knowledge. Law enforcement decisions involve the "exercise of sophisticated professional judgment" beyond that of a lay person. See Dist. of Columbia v. Hampton, 666 A.2d 30, 35-36 (D.C. 1995). Expert testimony is required to determine whether a particular officer was acting reasonably in a particular situation. See id.; Toy, 549 A.2d at 6; Dist. of Columbia v. White, 442 A.2d 159, 164 (D.C. 1982). The District of Columbia Court of Appeals has routinely required expert testimony to establish the standard of care "in negligence cases . . . which involve issues of safety, security, and crime prevention." Varner v. Dist. of Columbia, 891 A.2d 260, 267 (D.C. 2006). Without expert testimony, this Court is unable to gauge whether the officer's pursuit was reasonable under the circumstances.

Plaintiffs also allege that the officer saw the passengers in the car, Am. Compl. ¶ 13, implying his conduct was somehow more wrongful. Without conceding that the officer had observed the passengers in the car, the United States responds that if he had seen them, he may have concluded that the passengers were forced there unwillingly by the armed carjacker. Defs.'

---

[19] This does not necessarily mean that plaintiffs will prevail on the merits at trial. The Court emphasizes that this is a threshold determination that there is a genuine dispute that can only be resolved through a trial. The Court takes no position on the merits.

Mem. at 13.  Although this is possible, it is also plausible that a high-speed pursuit would

increase the risk of harm to the passengers.  Pls.' Opp'n at 4.  Again, this Court cannot grant

summary judgment on issues like this without expert testimony.

 Plaintiffs also allege that Officer Arellano's conduct violated the police department's own

policy, Am. Compl. ¶¶ 27, 36, suggesting that he was per se negligent.  Neither party has

provided the department policy, so the Court is unable to judge the substance of this claim.

Regardless, internal protocols and procedures are insufficient to demonstrate the standard of care,

see Clark v. Dist. of Columbia, 708 A.2d 632, 636 (D.C. 1997).  An officer's violation of police

department procedures does not necessarily engender liability automatically.  See Dist. of

Columbia v. Henderson, 710 A.2d 874, 877 (D.C. 1998).  Consequently, summary judgment is

inappropriate at this early point in the litigation.[20]

 Even without expert testimony, the genuine dispute over how a reasonable officer would

respond in this situation is sufficient to deny the motion for summary judgment.  District of

Columbia cases involving law enforcement pursuits can serve as useful analogies in this respect,

even though District of Columbia officers have a more liberal standard of care, see Dist. of

Columbia v. Hawkins, 782 A.2d 293, 300 (D.C. 2001); Walker, 689 A.2d at 44 n.6.  If an

---

 [20] The United States also suggests that plaintiffs were contributorily negligent because
there were two passengers in the stolen vehicle but only one passenger seat.  Defs.' Stmt. ¶ 7;
Answer at 8.  A claimant who is contributorily negligent is completely barred from recovery.
Lynn v. Dist. of Columbia, 734 A.2d 168, 172 (D.C. 1999).  But a plaintiff may still recover if
the plaintiff's negligence is not a proximate cause of the harm.  White v. Corbett, 51 A.2d 676,
677 (D.C. 1947).  A plaintiff may also recover if the defendant had the last clear chance to avoid
causing the harm despite the plaintiff's own negligence.  Felton v. Wagner, 512 A.2d 291, 296
(D.C. 1986).  The Court was provided with very few facts about the passengers' ride in the
BMW.  Without more information, the Court is in no position to grant summary judgment for the
United States on the theory of contributory negligence.

officer's conduct is grossly negligent, then it is also patently negligent. However, the Court must take care because the logical inverse is not true. That is to say, if an officer is not grossly negligent, he may still be negligent. His conduct could fall in the range between negligent and grossly negligent.

Consider <u>Hawkins</u>. There, an officer also pursued a stolen vehicle at eighty miles per hour, well in excess of the twenty-five mile per hour speed limit. <u>Hawkins</u>, 782 A.2d at 297. The court held that a reasonable jury could find that the officer was grossly negligent. <u>Id.</u> at 302. If the <u>Hawkins</u> court could find that such a pursuit could reasonably constitute gross negligence, then surely this Court can say that a fact-finder could reasonably find that a similar pursuit was negligent. This is not to say that all of the facts from the <u>Hawkins</u> case are the same as the case before this Court. For example, the driver was armed here, while there was no mention of a weapon in <u>Hawkins</u>. But although the need to apprehend the armed driver was unquestionably urgent here, that is only one factor to consider when weighing the reasonableness of the officer's pursuit. <u>See</u> <u>id.</u>

The United States points out that the pursuit lasted approximately only two minutes, Defs.' Stmt. ¶ 5, in an apparent attempt to suggest that the risk to third parties was low. However, if the officer's speed was around eighty miles per hour for those two minutes, then the pursuit covered over two and a half miles. The pursuit would have traveled further than the distance between the U.S. Capitol and the Lincoln Memorial. <u>See</u> Map of the National Mall, http://www.nationalmall.org/pdfs/NACCmap1.pdf (last visited July 28, 2008). Although the Court does not know what route the pursuit followed, it is not unfathomable to think that the pursuit would pass another vehicle or pedestrians over such a distance on a Saturday night.

Considering the totality of the circumstances, a fact-finder could reasonably conclude that the officer's speed was not appropriate in this situation, and hence that the officer was negligent. But until expert testimony is presented, this Court withholds judgment on the merits.

The United States also contends that plaintiffs are unable to prove proximate cause. Defs.'s Reply at 5 (citing Walker, 689 A.2d at 46). In order to prevail, plaintiffs must prove that the allegedly negligent conduct "played a substantial part in bringing about the injury and the injury was either a direct result or a reasonably probable consequence of the [conduct]." Sanders v. Wright, 642 A.2d 847, 850 (D.C. 1994) (internal quotation, citations, and alterations omitted). Here the primary focus must be not upon the conduct of the officers as a whole, then, but only upon that particular conduct that might be said to have proximately caused the collision. See Walker, 689 A.2d at 46. However, the Walker court expressly declined to decide that, "as a matter of law, no aspect of the [] officers' conduct was the proximate cause of the collision." Id. at 46 n.10. Notably, the Walker court made its ruling after a trial had already occurred. Id. at 41. Although this Court might ultimately find that the officer's alleged negligence did not proximately cause plaintiffs' harm, it would be improper so to decide at this time without allowing plaintiffs to present testimony on the point.

## CONCLUSION

The United States shall be substituted as the sole defendant for all claims in this action. The Court finds that plaintiffs' claims have a private analogue under District of Columbia law. Plaintiffs have also alleged sufficient facts to state a claim upon which relief can be granted. Additionally, there is a genuine dispute as to whether the officer's pursuit was reasonable under the circumstances, so summary judgment is inappropriate. Accordingly, the Court will deny the

United States' motion.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____

JOHN D. BATES
United States District Judge

Date: <u>August 14, 2008</u>